on behalf of James Murphy. I'd like to reserve three minutes for rebuttal after the government. Why two o'clock? The first issue I'd like to briefly address is that the government alleges that this is a plain error case. Clearly, page 5 of the sentencing memorandum filed by the defense on October 27th before the district court stated, and I quote, Mr. Murphy objected to the imposition of restitution by the city of Seattle. That's in the record at page 59. Again, at the sentencing hearing before the district court in this case, I made the argument, and I quote, I make an argument about restitution. For the court's benefit, that was a legal argument that's not being made because of Mr. Murphy per se. It's being made by counsel. As this court ruled last year in United States v. Doe, the legality of restitution orders is reviewed de novo, as well as the valuation methodology, which is reviewed de novo. Factual findings themselves are reviewed for clear error. So this is not a plain error case. The defense raised it in its sentencing memorandum and raised it in an oral argument before the district court. The government, in fact, argued for the first time that this is a plain error case. What I hear the government saying is the challenge was not to the court's authority to order restitution. It was to the restitution analysis. In other words, no point did the defense argue, look, court, you have no authority to order restitution in this case. It said we don't like restitution, we don't want restitution, but the authority argument wasn't made. So I understand that that's the government's plain error argument. Is that all, the things you've read to us, is that all that was said that would substantiate the fact that you raised an authority argument? Yes. I mean, I think that what I just read to the court was a sufficient raising of the court's authority. I mean, I think that the court's authority was a sufficient raising of the court's authority. The government itself, in its sentencing memorandum, cited 18 United States Code section 3663, and it wasn't until the government's reply brief that it, in fact, realized that the court didn't have authority under that section and then raised 3563 as a condition of probation. That was the first time that the government itself argued that basis for the court's authority. In its sentencing memorandum contained in the record, sorry, I don't have the brief in front of me right now, page 44 in the record, the government cited 18 United States Code section 3663A, which is the MVRA, and then an oral argument before Judge Zille. The government stated, quote, the statute provides that restitution is mandatory for pecuniary, that is, monetary damages to identifiable victims. And that's in the record of page 82 to 83. I think your argument is that you feel your objection was broad enough to include authority and the government interpreted it as such. That's correct, Your Honor. And that was presented to Judge Zille. That's correct, Your Honor. And I would further note that while even if the sentencing court had the authority to order restitution under 3563b2, which, again, the government raised for the first time in its reply brief, it's a rather labyrinthian process, but it winds and winds its way back to eventually 3663A. And the way that that route happens is 3563b2 explicitly says that the sentencing court can sentence a defendant to pay restitution as a condition of probation to a victim under section 3556. It then goes on to say that the defendant is not subject to the limitation of section 3663A or 3663AC1A. We then, on stage two, go to the fact that since 3563b2 very carefully delineates that the sentencing court's not subject to the limitations of 3663AC, small c, letter 1, capital A, it therefore follows that the other directives and mandates of 3663A have to be followed. They only excluded a very one directive of 3663A, which, again, is known as MVRA or the Mandatory Victims Restitution Act. 3663A or the Mandatory Victims Restitution Act requires that a victim be a person directly and proximately harmed as a result of the commission of an offense for which restitution may be ordered. Therefore, the City of Seattle still has to be a victim, as defined by 3663A, and it still must have been proximately harmed by Mr. Murphy, even if we accept the government's argument that Judge Zille sentenced him under 3563 as a condition of probation. Also, 3563b2 requires a sentencing court to order restitution pursuant to the provisions of section 3556, which is the restitution statute in the code. If we look at 3556, that again now refers us that the court is to follow the 3664 in determining what amount of restitution is due. 3664E requires the government to prove restitution that it seeks from a defendant by preponderance of the evidence. So when we get to the end of this long labyrinthian process, again, accepting the government at its argument that Judge Zille did indeed order restitution under 3563, if he did do that, the government still had to prove by preponderance of the evidence that, one, the City of Chicago was in fact a victim, and, two, that it was proximately harmed by Mr. Murphy's conduct, and, three, that there was a causal connection between what Mr. Murphy pled to and what the alleged harm was. The fact of the matter is that court did not do that. The City of Seattle itself said that the damages were collateral. The City of Seattle is not a victim of the two counts to which Mr. Murphy pled guilty. He pled guilty to count 13 and 15 of the indictment. Let's talk about the ‑‑ I think they wanted 40 hours of the investigating security officer's time in trying to figure out who was sending this stuff to the computers. Now, looking just at that 40 hours, why isn't the city a victim when it spends 40 hours of a particular officer's time trying to find out what this guy is doing to their system? Isn't that ‑‑ aren't they a victim? Well, at the very worst, there's an argument that could be made that the city is a victim and how pecuniary damages for the 40 hours spent. Well, that's just an example. In other words, there may be others. But, well, reading the record, that one came across to me as a fairly specific claim by the city for a loss at which the city suffered as a result of a defendant's conduct. Well, that's true. The city did indeed suffer that loss. But the vast majority of the loss that's claimed under restitution and for which Judge Zille ordered it, which was over $8,000, was for supposedly Ms. Ligon's lost productivity, which this court held in Hicks, cannot recover for lost productivity. And second of all, the government admitted an argument before Judge Zille that the city of Seattle was not out any money, any pecuniary damages for this lost productivity of Ms. Ligon. It did not pay her when days when she didn't come in. It was simply a figure pulled out of the air that the city was asserting that they were out for some psychological reason. So you don't think the city suffers any damage when its employees are diverted to efforts for which they weren't assigned? In other words, that they've got to do something else other than their assigned duties, that that's not a loss? Well, but the city never – the government never argued that she did something else or was off that day. They said these were simply charged back, is what was their term, which I don't think was ever defined, for lost productivity. But she did not miss work, and she would – the city was not out of pocket on that – those expenses. She was physically there. She just wasn't able to work. Well, how do you quantify that? I mean, do you say that she – if I have a hangover and I go to work that day and it takes me eight hours instead of six hours, is there a way to quantify that under the statute as required by the statute to say that I'm – that I – the city of Seattle is out so much money? I don't – I don't think it's quantifiable. I don't think it – it's a – under Hicks, it's a lost productivity argument, which I don't think is covered. And third, I don't think that Judge Zille made any specific findings that that was entitled – the city was entitled to restitution for that amount. So I don't think there's a causal connection that was proved under 3664 as required by the statute. Counsel, you're out of time. You've used all your time. Thank you. Thank you. May it please the Court and counsel, I'm Catherine Worma, Assistant United States Attorney representing the United States in this case. Your Honors, the single most salient fact in this case is that every time James Murphy chose to send one of his lewd, harassing or threatening communications, he addressed it to an employee of the city of Seattle and to a computer at which that employee worked. His intent in doing so was clear. It was to prevent her from performing her normal job duties, to alienate other employees of the city of Seattle, to create havoc within the computer system of the city of Seattle. Now, he pleaded guilty to counts, what, 13 and 15? Correct, Your Honor. Did those counts – what were those counts for? Would you remind me? One of those counts was a message to Joelle Ligon individually at her work computer, the communication he sent to JoelleLigon at Seattle.gov, as well as 10 other employees of the city of Seattle. Okay. Now, aren't we required – aren't you required then by the law to show, even if the city is a victim and even if the causal connections can be shown and so forth, aren't you restricted to showing – or pegging restitution to the amount that – of loss that occurred as a result of those two events? You can't use the whole panoply of charges that were dismissed. I think, Your Honor, that under the case law, we can – restitution can be obtained for direct and foreseeable costs resulting from his criminal conduct pertaining to the offenses of conviction. Okay. Those are the only two, though, that are the offenses of conviction. The others are not offenses of conviction. They are not offenses of conviction. They are offenses – they are criminal conduct to which he admitted as part of his plea agreement. He acknowledged sending all of these communications to Joelle Ligon and employees of the city of Seattle as a part of his plea agreement. Right. But isn't that the problem, that the statute says offense of conviction? So it really is irrelevant whether – what other facts, what other unconvicted activities, you know, activities that he engaged in that he did not have a conviction for. Those things cannot support the restitution award. I'm not sure where Your Honors are looking with respect to offense of conviction and that limitation. And I could respond more appropriately if I was aware of the reference. I would like to emphasize to Your Honors that in the affidavit prepared by the chief security officer of the city of Seattle, and this is contained at page 50 of the excerpt of record, chief security officer Bailey swore that the following chart shows the specific data and calculations used to determine the financial loss. All of the loss was related to lost productivity by staff and chargeback – that is an accounting term – for associated incident management and administrative costs directly related to this criminal matter. And I think Mr. Loroff was making reference to the difficulty of quantifying that. Well, the city of Seattle was very – they were able to assess. They spoke with the employees. They have named individual managers whose time was taken in order to address this problem and the very specific amounts of time that were required. And they computed the restitution amount down to the cent. So it was not an amorphous, generalized thing. It was a very specific assessment of time that was usurped from these individuals' ability to normally perform their duties on the job paid for by the taxpayers of Seattle. They were precluded from performing those jobs as a direct and foreseeable result of Mr. Murphy's conduct. Counsel, but lost productivity is not recoverable. The Hicks case that counsel referenced was a 1993 case. That case predated changes to the statutes. That case predated the change to the Victim Witness Protection Act, which was enacted by Public Law 103-322 in 1994. The Hicks case predated the Mandatory Act, which contained a similar provision as was added to the Victim Witness Protection Act in 1994. Both of those statutes now include language that does allow investigation costs, for example, and that would resubmit support and award for lost productivity costs. Well, investigation costs is different from loss of productivity. And if Your Honor would ---- So what is the specific language you're relying on? Yes. If you would give me just a moment, please. It is set forth now in 3663 at subsection B-4. In any case, reimburse the victim for lost income and necessary child care transportation and other expenses related to participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense. Excuse me. Similar language was added as part of the Mandatory Victim Restitution Act, and that is contained at subsection, again, B-4 of 18 U.S.C. 3663A. So both of those provisions were enacted into law after the Hicks case. We would submit that the Hicks case, that particular ruling in terms of lost productivity would be subject to question in view of the subsequent enactment of this language. But I don't see where it says loss of productivity. Well, I think, Your Honor, in terms of lost income ---- Income is different, isn't it? I mean, productivity is when you have ---- productivity is how fast you produce your work during a given period of time and the quality of that work. That's intangible. Well, it is a cost. It was a cost to this employer as a direct result of the action, the criminal conduct of this individual. It was a ---- I guess the problem here is how the definition of productivity, because it does seem ---- well, the first problem, victim impact statement, the chief security officer refers to everything that happened, not just the offense of conviction. And then he talks about loss of productivity. And he mentions other intangible things when he gets ---- here it is, lost productivity by staff and charge back. But then his enumeration of each of these things, and that's why I'm not sure about the charge back, but the hours spent seems measurable. If they actually stopped doing their city work and went to handle these cyber space issues, then I can see that those hours would be recoverable as long as they related to counts 13 and 15. What is the charge back again? The charge back, as I understand it, is the accounting term that refers to the accounting methodology used for city park employees. That is, the cost of employing a park employee is usually billed by the city parks department to a capital improvement project. The city of Seattle residents will vote for a bond issue to approve certain capital improvement projects. Bonds are issued. The costs of the park department employees are then billed to that project in a way that includes not only their salary, but the entire cost of employing that employee. That is, the overhead for employing that employee, the cost of their health insurance, all the other costs that an employer pays to have an employee, in addition to the salary that the employee takes home at the end of the day. Was that substantiated other than just a number, saying this is what it is? I mean, did they show how the number was arrived at? The affidavit from the officer from the city of Seattle was the documentation offered. There was reference in the transcript of the sentencing hearing. Officer Bailey was present in court and available for questioning. Defense counsel chose, for example, not to cross-examine him. Thank you, Your Honors. We would ask that the restitution award of $12,297.23 be presented.
judges: Thompson, T. Nelson, Wardlaw